Jeffery ROSE *v.* STATE of Arkansas

CR 87-22 742 S.W.2d 901

Supreme Court of Arkansas
Opinion delivered January 19, 1988

*Smith & Drake,* by: *Mark D. Drake,* for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

JOHN I. PURTLE, Justice. The appellant was charged with capital felony murder pursuant to Ark. Stat. Ann. § 41-1501(1)(a)(c) (presently codified as Ark. Code Ann. § 5-10-101 (Supp. 1987)), and after a jury trial was sentenced to life without parole. For reversal he argues three points: (1) that the trial court erred in refusing to suppress his custodial confession; (2) that the court erred in allowing the testimony of a witness by telephone; and (3) that the court erred in refusing to grant a continuance. Finding prejudicial error in allowing the confession to be introduced into evidence, we reverse the conviction and remand for a new trial.

The facts are not in material dispute. A double murder occurred near Eudora in Chicot County, Arkansas, the bodies of the victims being discovered in the afternoon of December 2, 1985. The only information the police had connecting the appellant to the murders was that over the weekend the appellant and the victims had been seen together. On Saturday, November 30, 1985, about 2 p.m., one of the victims was arrested for DWI and released the car to the appellant. About 1 a.m. on December 1, 1985, appellant, co-defendant Whitaker, and an unidentified subject were seen in the decedent's car. The vehicle was discovered burned in the late afternoon or evening of December 2, 1985, in a gravel pit east of Lake Village, Arkansas.

About 6:00 p.m. on December 2, 1985, Officer Farris was informed that the sheriff wanted appellant and Whitaker brought in for questioning. No warrant had been issued nor had a probable cause hearing been held. The officer contacted the appellant and Whitaker at their house sometime between 8:00 p.m. and 9:00 p.m. and requested that they go to the Eudora Police Department with him. After arriving at the Eudora Police Department the sheriff notified his deputy to bring the suspects to Lake Village. At Lake Village the appellant was locked up in a holding cell and given his Miranda rights. The appellant testified that at that point he felt he was under arrest and could not leave the jail. The jailer testified he would not have released the appellant from the holding cell if appellant had so requested and that appellant knew

he was not free to leave. Sometime after 10:00 p.m. the sheriff arrived at the Lake Village jail where the appellant was still being held in a locked cell.

The sheriff did not remember the exact time he started talking to appellant, but he did remember that no inculpatory statement was given during the first interrogation. At the direction of the sheriff the appellant was returned to the holding cell and ordered to change into prison clothing. The sheriff then questioned Whitaker from 12:20 until 1:15 a.m. on December 3, 1985. After talking to Whitaker, the sheriff again sent for the appellant. The sheriff stated: "I talked to him [appellant] the second time from 2 a.m. until 3 a.m. That is when he told me about his involvement in the case." The statement given at this time was used as evidence at the trial.

We have held many times that probable cause to arrest without a warrant exists when the facts and circumstances within the collective knowledge of the officers and of which they have reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense had been committed by the person arrested. *Roderick* v. *State*, 288 Ark. 360, 705 S.W.2d 433 (1986); see also *Burks* v. *State*, 293 Ark. 374, 738 S.W.2d 399 (1987). At the time the appellant was arrested there was no showing of anything beyond suspicion that he might be involved. Acting on this suspicion, the sheriff simply ordered these two men brought in for questioning. A seizure pursuant to an arrest or any other detention that severely intrudes upon a person's liberty must either be supported by probable cause or by clear and positive testimony that demonstrates consent. *Foster* v. *State*, 285 Ark. 363, 687 S.W.2d 829 (1985). At the time of the custodial statement the circumstances known to the police amounted only to a suspicion that did not rise to the level of probable cause.

Having decided that the appellant was illegally detained, we must now decide whether his inculpatory statements meet the Fifth Amendment voluntariness standard as well as whether they were sufficiently free acts as to purge from them the primary taint of the violation of his interests under the Fourth

Amendment. Custodial statements are presumed involuntary and the state bears the burden of demonstrating their admissibility. *Harvey* v. *State*, 272 Ark. 19, 611 S.W.2d 762 (1981). The state must prove that the custodial statement was voluntary and had no causal connection with the illegal detention. *Roderick* v. *State*, supra.

The appellant argues the statements were inadmissible because they were "fruits of the poisonous tree" as defined in *Wong Sun* v. *United States*, 371 U.S. 471 (1963), and its progeny. The United States Supreme Court considered a situation quite similar to the present appeal in *Brown* v. *Illinois*, 422 U.S. 590 (1975), where Brown, the accused, was taken into custody for investigative purposes without warrant or probable cause. The officers wanted to question Brown in connection with a murder. They went to his apartment and waited for him to arrive. While waiting they broke into his apartment and searched it and upon his arrival, about 7:45 p.m., he was arrested and told he was suspected of the murder of Roger Corpus. After Brown was taken into custody he accompanied the officers in a search to locate another suspect. They returned to the police station about 12:15 a.m. the following morning, and Brown was again placed in the interrogation room. He was given coffee and left alone, for the most part, until about 2 a.m., when the state's attorney arrived and again gave him his Miranda rights before commencing an interrogation. Brown subsequently made additional inculpatory statements.

The Illinois Supreme Court acknowledged that Brown had been taken into custody without warrant or probable cause for his arrest and concluded that the arrest was unlawful. However, the Illinois court found the confession given after 2 a.m. was a sufficiently free act on the part of Brown to purge the primary taint of violation of a Fourth Amendment right. The Illinois Supreme Court stated:

We conclude that the giving of the *Miranda* warnings in the first instance by the police officers and in the second by the assistant State's Attorney serves to break the causal

connection between the illegal arrest and the giving of the statements, and that defendant's act in making these statements was "sufficiently an act of free will to purge the primary taint of the unlawful invasion." (*Wong Sun* v. *United States*, 371 U.S. 471 at 486).

■ However, the United States Supreme Court reversed the Illinois court and stated:

> The question whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test.

In discussing what the *Brown* court called "the crossroads of the Fourth and Fifth Amendment," the Court gave four basic considerations for determining the admissibility of custodial confessions made while illegally detained. The four basic considerations are: (1) the giving of Miranda warnings; (2) the temporal proximity of the arrest and confession; (3) the presence of intervening circumstances; and particularly (4) the purpose and flagrancy of the official misconduct.

Under the circumstances of this case it is clear that the appellant was arrested without probable cause. He was originally detained for investigative purposes only. Before he made the inculpatory statement he had been at least twice locked in a jail cell while waiting to be interrogated by the sheriff. At sometime after he voluntarily left his residence with the officers he was no longer free to leave if he had chosen to do so. It is undisputed that at the time he gave the statement he was seized within the meaning of the Fourth Amendment.

The state established that the appellant was given the *Miranda* warnings several times. Therefore, the first part of the four-pronged test was met by the state.

■ As for the second factor, it is clear that the appellant began making incriminating statements approximately four or five hours after his initial detention. In *Taylor* v. *Alabama*, 457

U.S. 687 (1982), the United States Supreme Court held that the causal connection between the illegal arrest and subsequent confession was not broken by the fact that the defendant confessed six hours after his arrest. Therefore, the time between the appellant's arrest and his confession does not of itself remove the taint of the illegal arrest.

The third factor requires the consideration of any intervening circumstances. The appellant was not confronted by the police with any newly discovered evidence, nor was he visited by friends or family before his confession. The suspect in *Taylor* had been in police custody for six hours unrepresented by counsel, questioned on several occasions, fingerprinted, and subjected to a lineup. Considering that the appellant in the instant case was under similar custodial pressure without the benefit of counsel, was subjected to questioning and a breathalyzer test, and was ordered into prison clothing, we do not find any intervening factors which would serve to break the connection between the arrest and confession. See *Brown*, supra.

The fourth factor, the purpose and flagrancy of official misconduct, is entitled to special weight. *Brown*. The sheriff did not attempt to obtain an arrest warrant and acting without probable cause had his deputy pick up the appellant and lock him in a holding cell for several hours. Such conduct did not comply with the requirements of A.R.Cr.P. Rule 2. Apparently the purpose of holding the appellant and Whitaker was to question them alternatively until one of them confessed or until some other fact implicating them was discovered. Although there was good reason to suspect the appellant was involved in these murders, the officers should have continued the investigation until probable cause was developed, at which time a warrant could have been issued. Failure to adhere to established Constitutional standards cannot go unnoticed. Shortcuts on Constitutional rights cannot be tolerated.

Of the four factors to be considered, only the fact that the Miranda warning was given weighs in favor of a finding that the appellant's statements were not connected to his illegal detention. A finding of voluntariness for purposes of the Fifth

Amendment is merely a threshold question for Fourth Amendment analysis. *Lanier* v. *South Carolina*, 474 U.S. 25 (1985). The fact that a confession may be "voluntary" for Fifth Amendment purposes is not by itself sufficient to purge the taint of an illegal seizure in violation of the Fourth Amendment. *Taylor* v. *Alabama*, supra. Moreover, the compulsion inherent in custodial surroundings must be considered when deciding whether such custodial statements were obtained through exploitation of the illegal arrest.

 The Supreme Court in *Taylor* reaffirmed the "poisonous fruit" doctrine established in *Wong Sun* v. *United States*, supra, and followed in *Brown* v. *Illinois*, supra; *Dunaway* v. *New York*, 442 U.S. 200 (1970); *Miranda* v. *Arizona*, 384 U.S. 436 (1966); and *Terry* v. *Ohio*, 392 U.S. 1 (1968). We have held that a confession obtained as a result of an illegal arrest which cannot be justified under the *Leon* "good faith" exception to the exclusionary rule must be suppressed under the *Wong Sun* poisonous tree principle. *Stewart* v. *State*, 289 Ark. 272, 711 S.W.2d 787 (1986). Realizing that each case must be decided on its own facts, we have determined that there were no attenuating circumstances sufficient to break the causal connection between the illegal seizure of the appellant and the giving of the statements. To approve the introduction of these statements would encourage illegal seizures because the officers would know that evidence derived from such illegal action could nevertheless be used as evidence at the trial of the case. As the Supreme Court stated in *Brown*: "Fourth Amendment violations would be eviscerated by making the warrant, in effect, a 'cure-all' and the constitutional guarantee against unlawful search and seizure could be said to be reduced to a 'form of words.' " Given the "pressure atmosphere" existing during the time the appellant was locked up, and the lack of probable cause, the statements were inadmissible and their introduction constituted prejudicial error.

We need to briefly address the argument that it was error to take the testimony of an officer by telephone. The officer had been present during the interrogation of the appellant and at the time the confession was made. The appellant had requested in writing that all officers present at the time of the alleged confession be

present at the suppression hearing. Subsequent to the investigation of the murder the officer had terminated his employment in Chicot County and joined the United States armed forces. The trial court allowed the officer to testify at the suppression hearing by long distance telephone.

Relying on *Smith* v. *State*, 286 Ark. 247, 691 S.W.2d 154 (1985); and *Earl* v. *Smith*, 272 Ark. 5, 612 S.W.2d 98 (1981), the state argues that the telephone testimony should have been allowed because the witness was unavailable at the time of the hearing. We do not agree because the record does not show that the witness was unavailable as defined in *Lewis* v. *State*, 288 Ark. 595, 709 S.W.2d 56 (1986). There are no provisions under the Arkansas law or rules which allow the taking of a witness' testimony by telephone. The testimony of the officer was not admissible in this case.

The final argument that the trial court should have granted a continuance is now moot.

Reversed and remanded.

HICKMAN, J., concurs.