Eugene Leo LILLY *v.* STATE of Arkansas

CR 89-54                                          776 S.W.2d 347

Supreme Court of Arkansas
Opinion delivered September 25, 1989

*William R. Simpson, Jr.*, Public Defender and *Thomas B. Devine III*, Deputy Public Defender, by: *Llewellyn J. Marczuk*, Deputy Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Olan W. Reeves*, Asst. Att'y Gen., for appellee.

JOHN I. PURTLE, Justice. The appellant, Eugene Leo Lilly, was convicted of burglary, rape, and aggravated robbery. He was sentenced to 40 years for the burglary and two life sentences for the rape and the aggravated robbery. For reversal, he argues the sufficiency of the evidence and lack of probable cause. Both arguments fail, and the judgment of the trial court is affirmed.

Prior to the incident resulting in this case, the local police had received information that the appellant was a convicted sex offender. The managers of the neighboring apartment complexes where the appellant and the victim lived had been notified of his record.

On May 17, 1988, a person broke into the victim's apartment and committed the offenses of burglary, rape, and aggravated robbery. The victim told the police that the assailant broke a glass window, entered the apartment, and held a gun on her while he raped her. During the rape, the attacker pressed the gun against the back of the woman's head and repeatedly clicked the trigger. He also asked for money and, when he left, took the bedclothing with him.

The victim described her assailant as a black male about five feet nine inches tall and of medium build. She stated that he wore a stocking mask and denim jeans. Her description of the attacker corresponded to the general description of the appellant and aroused the suspicions of the investigating officers.

The police interviewed the manager of the victim's apartment complex and learned that the appellant had visited another tenant there. They discovered that the appellant's friend's apartment furnished a view of the victim's front door. The police then

went to the appellant's friend's apartment and were informed that the appellant had visited him the night before and that he could be found at a nearby automobile service shop where both men were employed. After the police questioned the friend, he went on to work.

The police later came to the business to question the appellant. As the police approached, they saw the appellant in conversation with his friend. When the appellant noticed the police car, he approached it and asked the officers if they wanted to talk to him. They replied that they would like to discuss a rape, burglary, and robbery.

The appellant was given a Miranda warning at that time. The officers requested that he go to the station with them. He said, "I have got nothing to hide," and voluntarily accompanied them. At the station, the police obtained the appellant's permission to search his apartment. While the officers were away searching the apartment, the appellant left the police station. At no time had he been told either that he could or could not leave the premises. No effort was made to prevent his departure.

During their search of the appellant's apartment, the police found a .45 caliber pistol with six live rounds in the clip; a ski mask; a denim jacket; a pair of jeans (soaking wet on a towel rack in the bath tub); and a towel bearing traces of blood. They also discovered a slip of paper with the number 133 and the license tag number NSL 046 written on it. The victim and her teenage daughter lived in apartment number 133 and drove an automobile displaying the license number NLS 046. The victim's bedclothing was recovered from a nearby garbage dumpster.

When the appellant returned to his apartment, the officers arrested him and returned with him to the station where his Miranda warning was again given. At that time he gave a statement in which he admitted his guilt. In the statement, he said that he broke into the victim's apartment "because I thought they [society] still owed me." He further stated that he "went in for money and didn't find any" and that "she [the victim] started asking me what I wanted and I said I didn't want anything but some money and where is the money."

Arkansas Code Annotated § 5-12-102 (1987) defines rob-

bery in the following terms: "A person commits robbery, if with the purpose of committing a theft or resisting apprehension immediately thereafter, he employs or threatens to employ physical force on another." Aggravated robbery, under Ark. Code Ann. § 5-12-103(a)(1) (1987), occurs when one "commits robbery as defined in § 5-12-102 and . . . [i]s armed with a deadly weapon or represents by word or conduct that he is so armed . . . ." The appellant's confession and the other evidence clearly support a finding that the appellant was guilty of aggravated robbery.

■■ We first consider the question of the sufficiency of the evidence. The appellant moved for a directed verdict at the close of the state's case and again at the close of all the evidence. Thus, the question of the sufficiency of the evidence is properly preserved for appeal. When the sufficiency of the evidence is at issue, the testimony is viewed in the light most favorable to the appellee, and the verdict is affirmed if there is any substantial evidence to support it. *Williams* v. *State*, 289 Ark. 69, 709 S.W.2d 80 (1986). The facts recited above constitute substantial evidence to support the convictions. The uncontroverted physical evidence reveals that the appellant broke into the victim's apartment for an unlawful purpose punishable by imprisonment. His own confession is substantiated by both the physical evidence and the victim's statements. We therefore conclude that the evidence is sufficient to support the verdict.

We next consider whether the trial court erred in refusing to dismiss the charges based upon lack of probable cause to stop, detain, and arrest the appellant. Probable cause was treated by this court in *Rose* v. *State*, 294 Ark. 279, 742 S.W.2d 901 (1988), where we noted that:

> We have held many times that probable cause to arrest without a warrant exists when the facts and circumstances within the collective knowledge of the officers and of which they have reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense had been committed by the person arrested. . . . A seizure pursuant to an arrest or any other detention that severely intrudes upon a person's liberty must either be supported by probable cause or by

clear and positive testimony that demonstrates consent.

■ Under the circumstances of this case, we have no difficulty in determining that the appellant voluntarily went with the police to the station the first time. The fact that he went to the station, in itself, is not sufficient to show voluntariness. However, when coupled with the other facts adduced in this case, it is clear that the appellant's first trip to the police station was voluntary. Moreover, he voluntarily consented to a search of his apartment. The evidence found at the apartment and elsewhere, together with the appellant's known background as a sex offender, gave the police probable cause to arrest him without a warrant.

The evidence in this case is sufficient to support a conviction on all three charges. The trial court properly refused to dismiss the charges based upon lack of probable cause. The judgment of the trial court is therefore affirmed.