Bobby Michael FRIEND v. STATE of Arkansas

CR 93-518                                              865 S.W.2d 275

Supreme Court of Arkansas
Opinion delivered November 15, 1993

*William H. Hodge,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Kent G. Holt,* Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Bobby Michael Friend, appeals a judgment of the Sevier Circuit Court convicting him of the capital felony murders of his parents and sentencing him to death on each count. Appellant raises two points for reversal of the judgment entered pursuant to the jury's verdict. We find merit to his first point and therefore reverse the judgment of convictions and death sentences.

There is no doubt that appellant was arrested without a warrant upon first contact with law enforcement officials in Hot Springs, Garland County, Arkansas. Upon showing proper identification, he was handcuffed, read his *Miranda* rights while being transported to the Garland County Jail, and held until Sevier County officials could question him about the homicides of his parents. When the Sevier County officers arrived, appellant admitted to being in his parents' home to get the keys to a family vehicle, a Chrysler Conquest, on the night of the murders. The Sevier County officials told appellant that they had a subpoena issued by the Sevier County Prosecuting Attorney and that they wanted to question him further in Sevier County. Appellant agreed to accompany them to Sevier County where he gave a detailed statement confessing to the murders of his parents.

As his first argument for reversal, appellant contends the trial court erred in denying his motion to suppress his statement which was obtained subsequent to appellant's arrest. Appellant contends the statement and any other fruits of his arrest should

have been suppressed at trial because he was arrested without a warrant and in violation of A.R.Cr.P. Rule 4.

■ At the hearing on appellant's motion to suppress, the trial court ruled that although appellant was arrested without a warrant, there was probable cause to arrest appellant. His arrest was therefore lawful and his statements would be admissible at trial. On appeal, all presumptions are favorable to the trial court's ruling on the legality of an arrest and the burden of demonstrating error rests on appellant. *Munnerlyn* v. *State*, 292 Ark. 467, 730 S.W.2d 895 (1987); *Sanders* v. *State*, 259 Ark. 329, 532 S.W.2d 752 (1976).

■ This court has held many times that probable cause to arrest without a warrant exists when the facts and circumstances within the collective knowledge of the officers and of which they have reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed by the person to be arrested. *See e.g., Roderick* v. *State*, 288 Ark. 360, 705 S.W.2d 433 (1986) (and cases cited therein). Such probable cause does not require that degree of proof sufficient to sustain a conviction; however, a mere suspicion or even "a strong reason to suspect" will not suffice. *Id.* It is the officers' knowledge at the moment of the arrest that determines whether probable cause exists. *Id.*, (citing *Beck* v. *Ohio*, 379 U.S. 89 (1964)).

■ This court has also provided that:

(d) A warrantless arrest by an officer not personally possessed of information sufficient to constitute reasonable cause is valid *where the arresting officer is instructed to make the arrest* by a police agency which collectively possesses knowledge sufficient to constitute reasonable cause. [Emphasis added.]

A.R.Cr.P. Rule 4.1(d).

On this appeal, appellant has demonstrated that the officers who arrested him without a warrant did so in violation of A.R.Cr.P. Rule 4.1(d). Initially, we note our agreement with the trial court's statement that the collective knowledge of the officers at the time of appellant's arrest constituted reasonable cause to arrest him. We view the collective knowledge of the officers as amounting

to reasonable cause in spite of the fact that two of the officers testified they did not suspect appellant committed the murders.[1] However, we cannot agree that appellant's arrest was lawful because it was made by an officer who did not personally possess the information constituting reasonable cause and who was not instructed by Sevier County officers, the officers who did possess the information constituting reasonable cause, to arrest appellant. *See* Rule 4.1(d). In short, the Sevier County officials did not instruct the arresting officers to arrest appellant; they merely requested other law enforcement agencies to stop appellant and hold him for questioning in the homicide investigation.

Lieutenant James Hale, of the Arkansas State Police, testified at the suppression hearing that his and Corporal Larry Lassiter's purpose in contacting appellant, handcuffing him, reading him his *Miranda* rights, and transporting him to the Garland County Jail was in response to two terminal messages received from Sevier County. Lieutenant Hale testified that the second terminal message or "G-Log" included more information than the first and stated:

> "Attempt to locate, stop and hold for homicide investigation, Michael Friend, white male, [DOB:] 11/6/72, 5'11" to six foot, 220 pounds, driving a silver '87 Chrysler Conquest. The license plate is given at this time, Arkansas SRZ 265. Last known contact with Friend was on Saturday. Believed subject possibly en route to Paragould to a Chil-

---

[1]The collective knowledge of the officers at the time appellant was arrested was based on the following reasonably trustworthy information: three months prior to the murders, appellant's father reported that he suspected appellant had stolen his gun and that appellant would do him harm; a week or two before the murders appellant attempted to seek advice on how to get back at someone; several days prior to the murders, appellant had a conversation with a workmate concerning the sale or purchase of a pistol in appellant's possession; a family friend reported the Friends missing for several days; officials found the Friends bludgeoned, stabbed, and cut to death in their bed at their home in DeQueen, Sevier County, Arkansas; there was no forced entry into the home; a robbery was staged and the only thing missing besides appellant was a vehicle; the vehicle was recovered and impounded by law enforcement officers; the vehicle was recovered at one of appellant's friend's house who, along with appellant and two other friends, had been stopped by an officer in DeQueen on the night of the murders, two of the friends told yet another friend that "someone will die tonight" and made slashing gestures to their throats; appellant's mother's throat and neck had been

dren's Center there in the city. He was inquiring about the home before last seen. Authority Sevier County Sheriff's Office."

Our review of the record convinces us that the Sevier County law enforcement officers had reasonable cause at the time appellant was arrested, to suspect appellant either murdered his parents or was an accomplice to their murders, either of which is a felony. The arresting officers were not instructed to arrest appellant by the Sevier County officers, who were the officers with reasonable cause to suspect appellant. Appellant's warrantless arrest was thus made in violation of A.R.Cr.P. Rule 4.1(d). His arrest and subsequent detention were therefore unlawful.

This court has stated that "[a]s to the illegal arrest, it has long been the rule that statements, like objects, are to be excluded as evidence if they are found to be the fruits of an unlawful arrest." *Roderick*, 288 Ark. at 365, 705 S.W.2d at 436, (citing *Wong Sun* v. *United States*, 371 U.S. 471 (1963)). Having decided appellant was unlawfully arrested and detained, we must now decide whether his confession meets the Fifth Amendment voluntariness standard as well as whether any of appellant's Fourth Amendment rights were violated. *Rose* v. *State*, 294 Ark. 279, 742 S.W.2d 901 (1988).

The custodial statement is presumed involuntary and the state must prove that the custodial statement was voluntary and had no causal connection with the illegal detention. *Roderick*, 288 Ark. 360, 705 S.W.2d 433 (citing *Brown* v. *Illinois*, 422 U.S. 590 (1975)). Whether the confession or statement is an act of free will under *Wong Sun* must be answered on the facts of each case applying the following four factors as stated in *Brown*: (1) the giving of *Miranda* warnings; (2) the temporal proximity of the arrest and confession; (3) the presence of intervening circumstances; and particularly (4) the purpose and flagrancy of the official misconduct.

---

cut multiple times; after recovering the missing vehicle, police questioned two of the friends, one of which initially denied being in DeQueen on the night of the murders but later admitted having "forgotten" the trip to DeQueen; appellant contacted officials inquiring as to why the "missing" vehicle had been impounded and leaving a bogus phone number at which his call could be returned.

. In its brief, the state ignores its burden and the need for this analysis and offers no argument to support a finding that appellant's confession was not caused by his unlawful arrest and detention. We therefore engage in this analysis on our own.

■ As for the first factor, the record reveals that appellant was given *Miranda* warnings at least twice. On appeal, appellant does not contest that he was read his rights or that he waived them. The first factor therefore weighs heavily in the state's favor and the threshold requirement of "voluntariness" under the Fifth Amendment is satisfied. *Taylor* v. *Alabama*, 457 U.S. 687 (1982).

■ We continue then with our analysis of Fourth Amendment violations. As for temporal proximity of the arrest and confession, there was approximately seven hours between the two. Appellant was arrested at approximately 10:15 a.m. and gave the incriminating statement sometime after 5:00 p.m. However, as this court stated in *Rose* while relying on *Taylor*, 457 U.S. 687, a period of a few hours between the arrest and confession does not of itself remove the taint of the illegal arrest.

As for the third consideration of intervening circumstances, we observe that appellant was in the company of law enforcement officers the entire time from his arrest until he confessed. There is no evidence that he requested or had contact with friends, remaining family, or counsel despite his receipt of *Miranda* warnings. However, we also observe that when the questioning in Garland County concluded, the officers told appellant they had a prosecutor's subpoena and wanted to talk with him further in Sevier County. After stating he did not have a way to get to DeQueen, appellant accepted the offer to return to DeQueen with the Sevier County officials.

Appellant does not contend he was required or forced to return with the officers. Although the murders were discussed, the officers did not interrogate appellant, they merely answered his questions. On the way to DeQueen, appellant was not handcuffed and the car doors were not locked. The officers stopped for lunch at a drive-in window at a McDonald's and offered to pay for appellant's lunch, but he refused. The officers testified that appellant was free to go at any time and that if he had tried to get out of the car at the Dierks junction, they could not have

stopped him. The record is silent as to whether appellant was expressly informed that he was not required to return to DeQueen with the Sevier County officers. Appellant did not testify at the suppression hearing nor at trial, thus we have no evidence to conflict with the officers' testimonies.

■ We conclude that although there is not an overwhelming number of intervening circumstances, there was indeed one — the conclusion of the interrogation at the Garland County Jail and the following request to continue interrogation in Sevier County to which appellant voluntarily agreed. However, like the second factor, the presence of these intervening circumstances is not sufficient in and of itself to remove the taint of the illegal arrest and detention.

The fourth factor, the purpose and flagrancy of the officials' misconduct, is particularly relevant. *Brown*, 422 U.S. 590. The Hot Springs officers' purpose in contacting appellant was to respond to Sevier County's request to hold appellant for questioning in his parents' murders. However, rather than responding to the request to hold appellant for questioning, the Hot Springs officers arrested appellant. They followed the department's policy of handcuffing any person that is transported. Appellant was immediately told why he was being held and read his *Miranda* rights en route to the Garland County jail where he was held in the booking room.

The Sevier County officers arrived at the Garland County Jail and questioned appellant in a criminal investigation room. After admitting to being in his parents' home three days earlier, the Sevier County officers told appellant they had a subpoena issued by the Sevier County Prosecuting Attorney and they wished to question him further in Sevier County. Appellant agreed to ride back to Sevier County with the officers. Upon arrival at the Sevier County Courthouse, appellant waited in a lounge area, was served with the prosecutor's subpoena albeit in the complete absence of the prosecutor, and then confessed to the murders.

■ This court has held that the prosecutor's subpoena cannot be used by the police to obtain the presence of a witness for questioning by the police, absent the prosecutor. *State* v. *Shepherd*, 303 Ark. 447, 798 S.W.2d 45 (1990). In the present case, the prosecutor's subpoena was not served in the prosecutor's

presence; the record is clear that it was used to subvert the requirements applicable to investigative stops. The record is also clear that the officers did not take any action to seek an arrest warrant once they were within the jurisdiction of Sevier County. We cannot overlook these failures to comply with appellant's Fourth Amendment rights.

In summary we find the sum of the four factors do not weigh in the state's favor. Appellant received his *Miranda* warnings at least twice. However, there was a delay of only seven hours between the arrest and the confession and while there may have been one intervening circumstance, both the delay and the intervening circumstance occurred while appellant was in continuous custody of law enforcement authorities. The official misconduct, while not flagrant in the sense that it was not glaring or obvious or of evil purpose, was nevertheless still misconduct. The United States Supreme Court has refused to recognize an exception to the exclusionary rule based on the "good faith" beliefs and actions of police misconduct. *Taylor*, 457 U.S. 687. Therefore, we conclude the state has failed to meet its burden of breaking the causal connection between the confession and the illegal arrest.

For the reasons stated in the foregoing, we conclude the trial court erred in denying the motion to suppress the confession and any other fruits of the unlawful arrest. Accordingly, we reverse the judgment and remand for a new trial.

We address appellant's second point to the limited extent, if any, it is likely to arise on re-trial. As his second point for reversal, appellant contends that prejudicial error occurred in the sentencing phase of the trial when his sister referred to appellant's prior juvenile conviction for some kind of sexual misconduct. The sister's comment was completely non-responsive to any question the prosecutor asked and appellant immediately objected. The trial court sustained the objection and instructed the jury that juvenile records are to remain confidential and to disregard the sister's comment. Appellant moved for a mistrial which the trial judge denied on the basis that the jury assured him they could disregard the comment. Appellant claims the denial of the mistrial was error.

■ It is likely that no error occurred here as appellant opened the door to such a comment. Appellant offered testimony from the recipient of a letter appellant had written in which appellant stated the juvenile charges had been dropped. When a defendant opens the door to issues of character, the state is entitled to rebut those issues of character. *Pickens* v. *State*, 301 Ark. 244, 783 S.W.2d 341, *cert. denied*, 497 U.S. 1011 (1990).

■ However, even assuming without deciding that error occurred here, any error was rendered harmless by the jury's unanimous finding that appellant had no prior criminal history as a mitigating circumstance. Thus, we can be assured the jury followed the trial court's admonition to disregard the sister's comment about the juvenile charges resulting in a conviction. We observe that we have previously allowed the jury's findings as to mitigating and aggravating circumstances, or the lack thereof, to illustrate that no prejudice occurred. *Pickens*, 301 Ark. at 252-53, 255, 783 S.W.2d at 346, 348.

■ A mistrial is a drastic remedy only to be resorted to when there has been error so prejudicial that justice cannot be served by continuing the trial. *Pickens*, 301 Ark. 244, 783 S.W.2d 341. Since the trial court did not abuse its discretion in denying the mistrial and there was no manifest prejudice to appellant, we conclude that no reversible error occurred. *Id.*

There is no indication in appellant's brief that all objections decided adversely to him have been abstracted as required by Ark. Sup. Ct. R. 4-3(h). Appellant has thus failed to comply with Rule 4-3(h). However, the state has stated in its brief that it has examined the transcript and made certain that all rulings adverse to appellant have been abstracted. In addition, pursuant to Ark. Sup. Ct. R. 4-3(h), we have examined the transcript for prejudicial errors objected to by appellant but not argued on appeal. We conclude that no such prejudicial errors occurred, other than the one for which we reverse and remand today.

The judgment of convictions and the sentences of death are reversed and remanded for a new trial.

HAYS, GLAZE, AND BROWN, JJ., dissent.

STEELE HAYS, Justice. When the majority concludes there

was reasonable cause to arrest the appellant for the murders of his parents, that disposes of appellant's point for reversal. Yet the majority then proceeds to reverse upon grounds argued neither here nor in the trial court. The majority declares the appellant has demonstrated that the officers arrested him without a warrant and that his arrest was in violation of Ark. R. Crim. P. 4.1(d). As to a warrant, if the officers collectively had reasonable cause to believe the appellant was involved in the murders of his parents, there is no requirement that they obtain a warrant for his arrest. *Ross* v. *State*, 300 Ark. 69, 779 S.W.2d 161 (1989); *United States* v. *Bazinet*, 462 F.2d 982 (8th Cir. 1972); Ark. R. Crim. P. 4.1(a). Appellant's arrest is presumed to be valid and the burden is on the appellant to demonstrate the illegality of the arrest. *Brewer* v. *State*, 271 Ark. 810, 611 S.W.2d 179 (1981); *Sanders* v. *State*, 259 Ark. 329, 532 S.W.2d 752 (1976). Since the appellant did not testify at the suppression hearing and offered no testimony whatever pertinent to this appeal, such proof is wholly lacking.

Having concluded that appellant was arrested by the Garland County officers, the majority holds such arrest was invalid because the arresting officers were not instructed to arrest the appellant, merely to hold him for questioning. That, of course, is exactly what they did. Yet the majority declares that to have been an arrest and in the same breath invalidates it, not for lack of probable cause (which is all the appellant argues), but because the officers were not instructed to arrest. Thus the police are put in a no-win situation under today's holding. Whatever legal effect the majority chooses to place upon it, there is no contention or evidence that the Garland County officers were not authorized to proceed exactly as they did by picking up the appellant in response to the terminal message from Sevier County. If they effectively arrested him in the process, it is only because they followed departmental policy that all individuals be handcuffed while being transported, a policy intended for their safety and that of the officers. If that policy conflicts with the rules of this court, the individual officers ought not to be penalized merely for acting in obedience to departmental rules.

Be that as it may, by reversing for a violation of Rule 4.1(d) the majority reverses upon a point not asserted by the appellant either here or in the trial court and thus not passed on by the trial

judge or briefed by either the appellant or the state. It is notable that the majority cites no authority for its interpretation of the rule and certainly none appears in the briefs, since this theory for reversal originates wholly with the majority. Indeéd, the only cases cited by the appellant are *Rose* v. *State*, 294 Ark. 279, 742 S.W.2d 901 (1988), and *Roderick* v. *State*, 288 Ark. 360, 705 S.W.2d 433 (1986), which deal simply with reasonable cause.

Finally, even if the appellant was invalidly arrested at Hot Springs by virtue of being handcuffed during the ten minute ride to headquarters, there is not the slightest proof that his confession was causally related to the arrest. *See Roderick* v. *State, supra*. It is undisputed that appellant was not arrested by the Sevier County officers, who testified without contradiction that appellant was not arrested and was free to accompany them or not as he chose. He rode with them to DeQueen by his own request and was free to leave at any time. Nor was he questioned by them during the trip to DeQueen. Appellant makes no claim that he was coerced. He arrived back in DeQueen between 5:00 and 5:30 p.m. and confessed at 5:30 after the *Miranda* warnings were twice read to him. In short, appellant has not produced one iota of evidence to overturn the findings of the trial court that his confession was freely and voluntarily made and the judgment should be affirmed.

GLAZE and BROWN, JJ. join in this dissent.

TOM GLAZE, Justice. I join Justice Steele Hays's dissent, but write only to say the majority opinion's single reason for reversing is the court's hypertechnical construction of its own rule, A.R.Cr.P. Rule 4.1(d). The majority court agrees that the Sevier County officers had collective knowledge that constituted reasonable cause to arrest the appellant without a warrant. Nonetheless, the court opines that the arrest, as it occurred, was unlawful because the state police officers actually making the warrantless arrest had no reasonable cause information to arrest appellant and the Sevier County officers, having that information, failed specifically to instruct the state law enforcement officers to arrest appellant. Instead, the Sevier County officers merely informed other police authorities to stop and hold appellant for questioning, not arrest him. The majority court reverses based upon its reading of Rule 4.1(d) which reads as follows:

(d) A warrantless arrest by an officer not personally possessed of information sufficient to constitute reasonable cause is valid *where the arresting officer is instructed to make the arrest by a police agency which collectively possesses knowledge sufficient to constitute reasonable cause.* (majority court's emphasis)

Here, even if Rule 4.1(d) was technically violated, appellant suffered no prejudice from his initial arrest. He gave no statement to the arresting officers in Garland County, and it is difficult for me to understand how the majority court can say the statement he eventually gave authorities in Sevier County resulted from his arrest in Hot Springs. As noted in the majority opinion, appellant *voluntarily* agreed to go to Sevier County for further interrogation. Thus, the confession eventually given by appellant in Sevier county is the fruit of his own voluntary decision to return to Sevier County, not from his so-called illegal arrest in Hot Springs.

For the reasons above and those stated in Justice Hays's dissent, I would affirm appellant's conviction.

HAYS and BROWN, JJ. join in this dissent.