Mark TRAVIS *v.* STATE of Arkansas

CA CR 96–1344 954 S.W.2d 277

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered September 24, 1997

322

*Val P. Price*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Senior Asst. Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge.

*An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation. Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more time each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. . . .*

> [P]eople are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles.
> —JUSTICE BYRON R. WHITE, WRITING FOR THE SUPREME COURT OF THE UNITED STATES IN *DELAWARE V. PROUSE*, 440 U.S. 648, 662 (1979).

Mark Travis has appealed a trial judge's decision denying his motion to suppress a .22 caliber rifle upon which appellant's conditional guilty plea to the charge of being a felon in possession of a firearm was based. We hold that the decision by the trial judge must be reversed because the police officer who stopped appellant's vehicle lacked a reasonable basis for doing so pursuant to the Fourth Amendment to the Constitution of the United States, court decisions pertaining to unreasonable seizures, and Rules 2.1, 3.1, and 4.1 of the Arkansas Rules of Criminal Procedure.

Appellant was charged by information with being a felon in possession of a firearm in violation of Ark. Code Ann. § 5-73-103 (Repl. 1993) after Deputy Glen Smith of the Lawrence County Sheriff's Department stopped the pickup truck in which he was a passenger and noticed a .22 caliber rifle barrel sticking out from behind the seat of the pickup. Deputy Smith testified at the hearing on appellant's motion to suppress that he noticed the pickup truck traveling northbound on U.S. Highway 67 at Minturn (Lawrence County), Arkansas, and observed that the Texas license plate on the truck did not have an expiration decal. The truck was driven by appellant's nephew, James E. Travis, whose driver's license had been suspended, but the truck belonged to appellant. Under Texas motor-vehicle laws, the registration and inspection sticker is displayed on the windshield of the vehicle, not the license plate. Appellant's vehicle did have the required sticker on the windshield. Alleging that Deputy Smith lacked reasonable suspicion to stop the vehicle, appellant moved to suppress the rifle. After the trial court denied the motion, appellant entered a conditional plea of guilty pursuant to Ark. R. Crim. P. 24.3(b), and this appeal followed.

The Fourth Amendment to the Constitution of the United States was ratified in 1791 by a new nation with a vivid memory about the evils of unbridled and random governmental intrusion into the private affairs of its people. That concern

included sensitivity about the interference into individual freedom and the intrusion into privacy posed when law enforcement officers stop a vehicle and detain its occupants. Although the Supreme Court of the United States held in *Terry v. Ohio*, 392 U.S. 1 (1968), that police may stop persons without probable cause under limited circumstances, it has also held that stopping a vehicle and detaining its occupants constitutes a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648 (1979). In *Prouse*, the Court considered whether police officers acting under a police regulation permitting officers to stop vehicles at random to check driver's licenses and registrations in Delaware violated the Fourth Amendment's guarantee against unreasonable seizures. The Court concluded as follows:

> [W]e hold that except in those situations in which there is at least articulable and *reasonable* suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. This holding does not preclude the State of Delaware or other states from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative. *We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers.*

*Prouse*, 440 U.S. at 663 (emphasis added). Although the Court recognized the legitimate interest of government in promoting highway safety, it determined that the intrusion on Fourth Amendment rights to travel and be left alone posed by the unbridled discretion of the police officer during a random stop in the field outweighed that governmental interest. *Id.* The Court also reasoned that there are methods of promoting the governmental interest in highway safety that are less intrusive to the rights protected by the Fourth Amendment. *Id.*

In *Brown v. Texas*, 443 U.S. 47 (1979), the Supreme Court again discussed the seizures caused when police officers stop motorists and reached the following conclusion:

> Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. [Citations omitted.]
>
> A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely by the unfettered discretion of officers in the field. [Citations omitted.] To this end *the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers.*

*Id.* at 50–51 (emphasis added). Furthermore, the Supreme Court has recently reiterated that an automobile stop is subject to the constitutional imperative that it not be unreasonable under the circumstances, but that the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 135 L.Ed.2d 89, 116 S.Ct. 1769 (1996).

In *Hill v. State*, 275 Ark. 71, 628 S.W.2d 285, *cert. denied*, 459 U.S. 882 (1982), the Arkansas Supreme Court upheld the constitutionality of an investigatory stop of the appellant's vehicle that exhibited an Oklahoma license plate because the late model maroon Ford Thunderbird matched the description of a car driven by an armed man who had robbed a Montgomery County service station and a Game and Fish Commission officer, kidnapped the proprietor of the station along with the officer, shot and killed the station proprietor, and wounded the officer before driving away. The wounded officer gave the police a description of his assailant and the car he was driving before being rushed to a hospital. Law enforcement offices in the surrounding area began receiving radio dispatches from the National Crime Information Center (NCIC) regarding the crimes, and the Hot Springs Police Department had broadcast a description of the assailant and the late model Ford

Thunderbird, maroon in color, with blue or black lettering on a white license plate. A Hot Springs police officer observed and stopped a vehicle matching that description traveling in Hot Springs, ultimately resulting in the arrest of the appellant who was convicted and sentenced for capital felony murder (death), kidnapping (50 years), and aggravated robbery (50 years) in connection with the offenses against the store proprietor, and for attempted capital murder (life), kidnapping (50 years), and aggravated robbery (50 years) in connection with the offenses against the Game and Fish Commission officer. The supreme court reasoned that the police had reasonable suspicion to make an investigatory stop of appellant's car because it matched the description of the police broadcast, because it was unlikely that another vehicle with that description was in the Montgomery-Garland County area at that time, and because the crimes had only recently been committed in the small community of Pencil Bluff in neighboring Montgomery County. *Id.* at 80, 628 S.W.2d at 288.

In *Cooper v. State*, 297 Ark. 478, 763 S.W.2d 645 (1989), the Arkansas Supreme Court cited the *Hill* case in holding that the initial stop of appellant's vehicle was valid based upon testimony at a hearing on the appellant's motion to suppress evidence seized from his vehicle in connection with prosecutions for attempted capital murder, possession of methamphetamine with intent to deliver, possession of marijuana with intent to deliver, possession of drug paraphernalia, and felon in possession of a firearm. The appellant had been stopped by a Fort Smith police detective who noticed a 1969 Oldsmobile traveling in Fort Smith with what appeared to be out-of-state handwritten paper car tags. However, the officer could not determine the expiration date of the tags nor the state where they had been issued, and considered the presence of temporary tags suspicious given the age of the vehicle. When the officer pulled alongside the vehicle, its driver looked directly at him and soon made a sudden left-hand turn without giving a signal. The supreme court reasoned that the stop was valid under the Fourth Amendment because the paper tags, impossibility of verifying the state of their issuance or expiration date, age of the vehicle, and the "obviously evasive actions of the driver" gave the

officer sufficient cause to stop the vehicle. *Id.* at 481, 763 S.W.2d at 646.

■ Arkansas Rule of Criminal Procedure 3.1 states:

A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects *is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.*

(Emphasis added.) Ark. R. Crim. P. 2.1 defines "reasonable suspicion" as a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion. Reasonable suspicion entails a consideration of the total circumstances and the existence of particularized specific reasons for a belief that the person may be engaged in criminal activity. *Stout v. State*, 304 Ark. 610, 804 S.W.2d 686 (1991).

■ The facts in *Hill* and *Cooper* and the reasonable-suspicion standard prescribed by Rules 3.1 and 2.1 are dramatically different from the facts in this case. This case does not involve evidence that a crime had been committed, was about to be committed, or had been observed being committed involving the vehicle that Deputy Smith stopped. Deputy Smith admitted that his sole reason for stopping appellant's vehicle was because he did not see an expiration tag on the Texas license plate. Under Texas motor-vehicle laws, the registration and inspection sticker is displayed on the windshield of the vehicle, not the license plate. Thus, the fact that Deputy Smith did not observe an expiration sticker did not constitute and could not have constituted a reasonable basis for suspecting that the vehicle or its occupants may have been engaged in criminal activity, not to mention crimes within the scope of Rule 3.1. Put differently, the totality of the circumstances does not support the conclusion that Deputy Smith had a reasonable suspicion justifying the stop.

The dissenting opinion tacitly concedes that appellant's seizure cannot be sustained against Fourth Amendment challenge based upon the "reasonable suspicion" assertion advanced by the State. Both parties briefed the case based upon the reasonable-suspicion ground in Ark. R. Crim. P. 3.1. However, our dissenting colleagues argue that Deputy Smith's stop was valid because he supposedly had reasonable cause to arrest appellant without a warrant. We respectfully disagree because Arkansas law clearly does not countenance that conclusion.

Arkansas Rule of Criminal Procedure 4.1(a) provides that a law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed a felony; a traffic offense involving (A) death or physical injury to a person, or (B) damage to property, or (C) driving a vehicle while under the influence of any intoxicating liquor or drug; or any violation of law in the officer's presence. Aside from the fact that no one has ever claimed that Rule 4.1(a) applies to this case, there is no evidence demonstrating that Deputy Smith had "reasonable cause" to believe that any of the rule's provisions applied to appellant when he stopped the pickup. Deputy Smith testified that he did not observe any unsafe or improper movement of appellant's vehicle. There is neither proof nor allegation that the pickup was being operated in violation of Arkansas law. There is no proof that Deputy Smith had facts indicating how long appellant's vehicle had been in Arkansas, not to mention information that the truck had displayed the Texas tags for longer than Arkansas permits an out-of-state licensed vehicle to be operated on our highways. Because the only proof is that Deputy Smith saw appellant's vehicle being lawfully operated on a U.S. highway displaying permanent Texas license plates, the Arkansas statutes making the failure to display a license plate, operating an out-of-state licensed vehicle in Arkansas for more than ninety days, or displaying a fictitious license (the grounds suggested in the dissenting opinion) are patently inapposite.

It is certainly true that probable cause does not require the degree of proof sufficient to sustain a conviction; however, there must be more than a strong suspicion that an offense has been committed. *Friend v. State*, 315 Ark. 143, 865 S.W.2d

275 (1993). Our supreme court has long held that probable cause to arrest without a warrant exists when the facts and circumstances within the collective knowledge of the officers, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. *Id.* Reasonable cause for effecting a warrantless arrest under Rule 4.1(a) requires *facts* that suggest to the police that the law has been broken, and that the person to be arrested has broken it. Yet, the dissenting opinion would condone the warrantless arrest by Deputy Smith based upon undisputed proof that he had no information that justified even the vaguest suspicion that any law was being broken, let alone that appellant should have been arrested because he was riding in a pickup truck with Texas license plates on a U.S. highway in northeast Arkansas. If Deputy Smith lacked enough information to constitute grounds for reasonable suspicion for an investigatory stop, he manifestly lacked reasonable cause for a warrantless arrest. Idle curiosity or baseless speculation by law enforcement officials is antithetical to reasonable suspicion and reasonable cause under any analysis.

 The relevant inquiry concerning probable cause is not whether appellant was eventually charged with violating Ark. Code Ann. § 27-14-704(a) (Repl. 1994) for operating a motor vehicle registered in another state more than ninety days. Instead, the proper question is whether Deputy Smith had specific and objective facts that justified a belief that appellant had engaged in conduct deserving arrest before he stopped the pickup. Deputy Smith was not acting under the authority of an arrest warrant, so the Fourth Amendment's probable-cause requirement demanded that he possess specific and articulable information based upon objective factors which reasonably justified the belief that appellant was committing, had committed, or was attempting to commit a crime. To say that Deputy Smith lacked probable cause to arrest appellant is not to resort to hindsight. Rather, it is to acknowledge what Smith admitted; namely, that he lacked any information that justified arresting appellant when he stopped the pickup. It makes no difference that appellant was not charged for violating Ark. Code Ann. § 27-14-704(a). What is important and

controlling is that Deputy Smith had no factual basis for arresting appellant *on any charge* when he stopped the pickup.

Unlike the facts in *Hill v. California*, 401 U.S. 797 (1971), this case does not involve a good-faith error by the police involving the arrest of the wrong person for what is plainly criminal conduct. The Supreme Court upheld the arrest in *Hill* because there were facts showing that the police had probable cause to arrest a person for possession of narcotics despite having misidentified the appellant as the suspect. At least the officers in that case had a reasonable basis for believing that somebody had committed a crime. Deputy Smith had no reason to believe that any crime had occurred, let alone that appellant or anybody else associated with the pickup truck had violated the law.

The Arkansas cases cited in the dissenting opinion do not support a finding of reasonable suspicion to stop, let alone reasonable cause to arrest, because they all obviously involved the failure of *Arkansas* drivers to display a proper license plate, and the arresting officers in every instance knew this before the stops. *See State v. Storey*, 272 Ark. 191, 613 S.W.2d 382 (1981) (motion to suppress erroneously granted; appellee's truck lacked license plate); *Williams v. State*, 23 Ark. App. 121, 743 S.W.2d 402 (1988) (appellant's car lacked a license plate); *Wilburn v. State*, 317 Ark. 73, 876 S.W.2d 555 (1994) (arresting officer determined by police radio check, *before stopping appellant*, that license was issued to another vehicle); *Hazelwood v. State*, 328 Ark. 602, 945 S.W.2d 364 (1997) (arresting officer determined that license plate was registered to a different vehicle before stopping appellant.)

Had this been a case where the evidence supporting either reasonable suspicion to make an investigatory stop or reasonable cause for a warrantless arrest had been conflicting on the issue of whether Deputy Smith possessed information suggesting that the law had somehow been violated, then the trial court's decision could be affirmed based on the standard of review that requires that we review the record pertaining to appellant's motion to suppress and affirm the trial court if the totality of the circumstances support a finding that the result reached was not clearly against the preponderance of the evidence. However, the

"clearly erroneous" standard of review cannot be the reason for *affirming* the trial court where there is no evidence showing that the totality of the circumstances surrounding the stop or arrest supports a finding of either reasonable suspicion or reasonable cause. If anything, the "clearly erroneous" standard of review mandates reversal.

The dissenting opinion also cites a California Court of Appeals case, *People v. Glick*, 250 Cal. Rptr. 315 (Cal. App. 1988), involving a New Jersey vehicle that was stopped because the license plate displayed no current registration decals. New Jersey, like Texas, utilized reinspection stickers to be placed on the front windshield. The court in *Glick* held that the officer's "mistaken" interpretation of a foreign law was not unreasonable. *Id.* at 319. The *Glick* opinion cited *Delaware v. Prouse, supra,* in which the United States Supreme Court upheld the *granting* of a motion to suppress evidence obtained after Prouse's vehicle was stopped only to check his driver's license and registration. Although the *Prouse* opinion stated that states have a vital safety interest in ensuring that vehicle licensing, registration, and inspection requirements are being observed, the Supreme Court held that the discretionary stopping of vehicles to *ascertain* compliance with registration requirements violated the Fourth Amendment, stating:

> When there is not probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations — or *other articulable basis amounting to reasonable suspicion that the driver is unlicensed or his vehicle unregistered* — we cannot conceive of any legitimate basis upon which a patrolman could decide that stopping a particular driver for a spot check would be more productive than stopping any other driver. This kind of standardless and unconstrained discretion is the evil the court has discerned when in previous cases it has insisted that the discretion of the official in the field be circumscribed, at least to some extent. (Citations omitted.)

*Id.* at 661 (emphasis added). In view of the Supreme Court's plain statement, we are unable to reconcile the *Glick* holding and result with the Supreme Court's holding and result in *Prouse*.

At most, the fact that Deputy Smith did not see an expiration sticker on the license plate justified some other and less intrusive

method of investigation than seizing the vehicle and its occupants and interfering with their Fourth Amendment freedom to be left alone. And it is self-evident that less intrusive means of ascertaining whether the vehicle was properly registered were available to Deputy Smith. Automobile vehicle-registration information is available to police agencies through a national motor-vehicle-registration information system that can be accessed by computer. Deputy Smith could have radioed for that information without interfering with appellant's Fourth Amendment rights. He could have radioed his headquarters and learned that Texas does not require display of the registration-expiration certificate on the license plate of pickup trucks registered in that state. Deputy Smith did not observe the vehicle being operated unsafely or in violation of any laws, and he testified that he noticed nothing suspicious about its occupants before he stopped it. Nobody has ever deemed that to be suggestive of conduct outside the Fourth Amendment guarantee against unreasonable seizure, not to mention a basis for being arrested for committing a crime.

Arkansas lies in the heartland of the United States, a land of forty-eight contiguous sovereign state governments joined together by a fascinating complex of highways. Hence, the result advanced by the State would mean that vacationers from Canada and Mexico, business travelers from Louisiana, college students on school break from Idaho, and people relocating their households and families from one state to another would be at the constant mercy of the ignorance or whim of every law enforcement officer who does not know what the registration requirements are for automobiles from their respective states. Of course, even children riding the Arkansas roadways know that automobile license plates vary from state to state. If we were to adopt the State's position, every police officer could stop any vehicle at any time and anywhere the officer sees the vehicle along the roads, streets, and highways of Arkansas even if there is no rational basis for suspecting that the law is being broken. The Fourth Amendment guarantee against unreasonable seizures protects all persons, including motorists, from such baseless interference with their right to be left alone.

These and similar concerns underlie the reason for the Fourth Amendment and the analysis that the United States Supreme Court articulated in *Brown v. Texas, supra,* of weighing the gravity of the public concern in highway safety served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. The record contains no evidence that this balancing analysis was performed by the trial court. Instead, the State urges us to uphold a vehicular stop prompted by ignorance on the part of a law enforcement officer regarding the proper location for a vehicle-registration decal. The record does not show how this result is consistent with the Fourth Amendment's guarantee that motorists traveling the open highways will be free from unreasonable seizure. It also fails to show how the unbridled and random discretion of a police officer in the field in this context outweighs the protection from unreasonable seizure that the Fourth Amendment guarantees every motorist. Furthermore, the State does not explain why it is necessary for us to uphold this unbridled discretion by police officers to make random stops of motorists who travel the highways of Arkansas in similar situations when less intrusive methods of ascertaining whether a vehicle is properly registered exist that are equally effective in addressing the officers' concern for highway safety, pose no unreasonable threat to the legitimate privacy interests of motorists, and expose the officers to no risk of danger.

Deputy Smith's candid admission that appellant's vehicle was not operating unsafely and that he observed nothing suspicious about its occupants proves that the *Brown* balancing process should have been resolved in appellant's favor had the trial court employed it. Moreover, that explanation clearly shows the unsoundness of justifying the stop as an arrest under Ark. R. Crim. P. 4.1(a)(iii). Whatever else probable cause for a warrantless arrest has been understood to mean, no one has ever persuaded an Arkansas court that probable cause to make an arrest is established without proof that the law has been broken.

Law enforcement officials can fulfill their legitimate highway-safety responsibilities without abusing the freedom that we cherish in being left alone. The result below is not consistent

with the Fourth Amendment, does not comport with case law dealing with the subject, violates Rules 2.1 and 3.1 of the Arkansas Rules of Criminal Procedure, and would render the reasonable-cause standard contained in Rule 4.1 for upholding warrantless arrests meaningless.

Reversed and remanded.

ROBBINS, C.J., AREY and ROAF, JJ., agree.

PITTMAN and MEADS, JJ., dissent.

JOHN MAUZY PITTMAN, Judge, dissenting. I respectfully dissent because I believe Deputy Smith's stop of the appellant's vehicle was reasonable under the facts of this case.

Arkansas law concerning probable cause for arrest is well established. "Probable cause" to make an arrest without a warrant exists when the facts and circumstances within the knowledge of the officer are sufficient to warrant a man of reasonable caution to believe that an offense has been committed by the person to be arrested. *Friend v. State*, 315 Ark. 143, 865 S.W.2d 275 (1993). Such probable cause does not require the degree of proof sufficient to sustain a conviction; however, there must be more than a strong suspicion. *Id.* In assessing whether probable cause exists, our review is liberal rather than strict. *Baxter v. State*, 324 Ark. 440, 992 S.W.2d 682 (1996). The court looks to the officer's knowledge at the moment of arrest to determine whether probable cause exists. *Id.*; *Friend v. State, supra.*

Therefore, the only facts pertinent to the existence of probable cause were those known to Deputy Smith at the time that he stopped the vehicle in which appellant was a passenger. Deputy Smith testified that he did not see a license-registration decal on the vehicle, and particularly on the license plate as required under Arkansas law. Ark. Code Ann. §§ 27-14-1005 and 27-14-1018 (Repl. 1994). In addition, Arkansas law provides that a nonresident's vehicle represented to be licensed and registered in another state may be driven in Arkansas only if the vehicle's licensing and registration does, in fact, comply with the out-of-state's applicable licensing law. Ark. Code Ann. § 27-14-704(a) (Repl. 1994). Given the circumstances of this case, I submit that Deputy Smith's mistake of a foreign jurisdiction's law concerning the display of a

motor-vehicle-registration decal was reasonable. Deputy Smith is a county law enforcement officer in a rural area, Lawrence County. Lawrence County is not located near the Arkansas–Texas border.[1] Moreover, when Deputy Smith stopped appellant's vehicle it was not traveling along a major interstate highway, and nothing in the record suggests that Texas motorists commonly drive through Lawrence County. In a remarkably similar case, the California Court of Appeals stated that:

> [Law enforcement officers have] a duty to insure that the vehicles which operate on our state highways are fit for operation and that the license and vehicle registration requirements are met. *See Delaware v. Prouse,* [440 U.S. 648, 658 (1979)]. The registration requirement and the reinspection sticker are designed to keep dangerous cars off the highway. Moreover, it is unlawful to operate an out-of-state vehicle on our streets which is not registered in the foreign state . . . or if properly registered in that state, is not re-registered in [our state] within twenty days of the owner . . . establishing his residency. . . . An officer cannot reasonably be expected to know the different vehicle registration laws of all the sister states. A proportionately few persons from New Jersey regularly visit this state by vehicle. . . . We conclude that the New Jersey Vehicle Code is not something the officer is reasonably expected to know or has an opportunity to routinely enforce.

*People v. Glick,* 250 Cal. Rptr. 315, 319 (Cal. App. 1988); *see also State v. Baer,* 776 P.2d 876 (Or. App. 1989) (Oregon police officer who stopped automobile displaying only one South Dakota license plate had probable cause to do so notwithstanding his admission that he had no knowledge of South Dakota law; South Dakota required that vehicles display two license plates, one on the front of the vehicle and one on the rear).

I believe that the above-cited cases fit the circumstances of appellant's stop more precisely than do those cited by the majority and for this reason I respectfully dissent.

---

[1] This court may take judicial notice of the map of the State and of distances between places on the map. *Van Dalsen v. Inman,* 238 Ark. 237, 239, n.1, 379 S.W.2d 261 (1964).

MEADS, J., joins in this dissent.