PEEK *v.* BANK OF STAR CITY.

5-3223                                               377 S. W. 2d 158

Opinion delivered April 13, 1964.

*Coleman, Gantt, Ramsay & Cox,* for appellant.

*Fulk, Lofton, Wood, Lovett & Parham,* for appellee.

JIM JOHNSON, Associate Justice. This suit resulted from a rather involved series of banking transactions frequently called check kiting. Sometime late in December, 1961, the cashier of appellee Bank of Star City advised one of its customers, the late J. Thurman McCool,

that he had a number of bank drafts being returned unpaid and that he would either have to deposit sufficient funds to cover these drafts or the bank would accept future drafts for collection only. McCool had several accounts at this bank including one styled "Business Machines Company" and another "Jefferson Printing Company." McCool had sold appellant, Noah S. Peek, Jr., quite a number of installment contracts and notes for business machines McCool had sold to others. On January 1, 1962, McCool obtained a check on a "customer's draft" form from appellant, apparently intended as an advance on several contracts appellant planned to buy from McCool. Appellant testified that when he signed the customer's draft form, it was dated January 1, 1962, the figures "500.00" were typed in, as was "Citizen's Bank, England, Arkansas." Appellant signed the check and wrote "Peek Farm Service" above his name. On January 2nd when McCool presented the check to appellee bank, the check was payable to "Peek Finance Company," the "sum of $22,500.00" was imprinted on it with a checkwriter, two 2's and a comma were typed in front of the 500.00, and the words "to establish account" was also typed on the face of the check. On the back was a rubber-stamp endorsement, "For deposit only, Peek Finance Company." Appellee's cashier opened an account styled "Peek Finance Company" for which McCool signed the signature card as the only authorized signer for this account, and received $2,450.00 in cash. During the next two days appellee received over $14,000.00 worth of drafts returned which had been credited to McCool's Business Machines Company account, which appellee deducted from McCool's Peek Finance Company account. On January 5, 1962, the Citizens Bank of England, being unable to contact appellant, returned the check because there were not sufficient funds in the Peek Farm Service account to pay it, and so advised appellee bank by telephone. Appellee bank put the check through for payment a second time and it was returned with the following notation on the back: "Protested—check was altered —forged and counterfeit signature and further the body of check was altered and raised. Noah S. Peek, Jr."

During this time McCool disappeared and was later found dead. After making demand for payment of the check, appellee filed suit in Jefferson Circuit Court on March 23, 1962, against appellant alleging that it had received the check for value and without notice of any infirmity thereon and prayed judgment for $22,500.00. The matter was tried on August 6, 1963, and the jury returned a verdict for appellee in the sum of $8,500.00. From judgment on the verdict, appellant has prosecuted this appeal urging that the verdict of the jury was perverse and in conflict with the instructions of the court and the evidence.

The cashier and other witnesses of appellee testified about drafts which had been credited to McCool's Business Machines Company account being returned unpaid to appellee, who in turn charged the drafts, together with the $2,450.00 cash given McCool, against McCool's Peek Finance Company account for a total of $16,818.75. Appellant contends that under no conceivable posture of the evidence in this case applied under the law given in the instructions could the jury have validly found that appellant was indebted to appellee in the sum of $8,-500.00, the amount of the verdict, and that such amount was purely speculative, apparently a jury attempt to compromise the losses between the parties, and therefore perverse. The testimony in the case at bar was sharply conflicting, indicating such negligence on the part of appellant as to support a verdict for the full $16,818.75, and on the other hand indicating such negligence on the part of appellee as to support a verdict for appellant. The rule here applicable was simply stated in *Fulbright* v. *Phipps*, 176 Ark. 356, 3 S. W. 2d 49: ''It is true that the verdict is not consistent, but this is not grounds for us to reverse the judgment, as it is supported by very substantial and sufficient testimony.''

Appellant next contends that his motion for a directed verdict should have been sustained. At the close of appellee's testimony, appellant moved that a verdict be directed in his favor on the ground that given its highest probative value the evidence elicited in favor of

appellee was insufficient to constitute grounds for any recovery by appellee against appellant, which was denied. This motion was renewed at the close of appellant's case by means of an offered binding instruction, which was refused by the court. In *Neal* v. *St. L.I.M.&S. Ry. Co.*, 71 Ark. 445, 78 S. W. 220, this court said:

"The pratcice of directing a verdict for the defendant when it is clear that the evidence is not sufficient to make out a case for plaintiff is a wise one, for it saves time and costs, and expedites the business of the court; but a case should not be withdrawn from the jury in that way unless it can be said as a matter of law that no recovery can be had upon any reasonable view of the facts which the evidence tends to establish. *Catlett* v. *Railway Company*, 57 Ark. 527; *Texas & P. Ry. Co.* v. *Cox,* 145 U. S. 593; 6 Enc. Plead. & Prac. 679-680."

Under the long standing practice in this state, even where ". . . we think there is not much evidence to sustain the assertion of the plaintiff, he had, we think, the right to submit the question to the jury. . . ." *Hutchinson* v. *Gorman,* 71 Ark. 305, 73 S. W. 793. And where, as here, the evidence was substantial and certainly conflicting, the trial court did not err in refusing to direct a verdict for appellant.

Appellant finally urges that two of the instructions offered by appellee and given by the court were prejudicially erroneous. We have reviewed all of the instructions, whether offered by appellee, appellant or the court. Taken as a whole, including the two complained of instructions, we find that the instructions fairly correlate the testimony to the applicable law, including the Uniform Commercial Code. Finding no error, we therefore **affirm.**