[No. 30085-7-I.   Division One.   July 19, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGIA LOVEVENE HETTICH, *Appellant*.

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *David F. Thiele, Deputy,* for respondent.

SCHOLFIELD, J. — Georgia Hettich appeals her conviction of vehicular homicide, RCW 46.61.520, and driving while license suspended (DWLS), RCW 46.20.342, arguing that she was improperly prevented from pleading guilty to the DWLS charge, and that the trial court erred in certain evidentiary rulings. We affirm.

On April 10, 1990, Cathleen Smith and Hettich stopped at a tavern in Monroe. Hettich drank at least three beers, and Smith had five glasses of wine. Smith got sick, and Hettich agreed to drive Smith's car home even though Hettich's license was revoked. After driving 10 minutes or so, the car left the road and hit a utility pole and line of trees. Smith died at the scene from head injuries.

State Trooper John Dunlap was the first officer on the scene. Hettich first told Dunlap that she was not the driver, but a short time later Hettich apologized for not being truthful and told him she was the driver. She stated that Smith had grabbed the steering wheel and that had caused the accident. Dunlap testified Hettich had watery and bloodshot eyes.

On October 5, 1990, Hettich was charged with vehicular homicide. The State filed an amended information on March 22, 1991, adding the DWLS count. The court permitted the amendment on the grounds that Hettich would not be substantially prejudiced in preparing to meet the added charge.

Hettich pleaded not guilty. At the pretrial hearing on August 15, 1991, the defense moved to dismiss the DWLS count as untimely, or alternatively to sever the counts for trial. The court suggested that a stipulation be entered so that the reason for the suspension would not be disclosed to the jury.

At trial, the defense renewed the motion to sever the counts. The court denied the motion, but ruled that the State would not be permitted to enter evidence that the basis for the DWLS charge was a DWI. After the motion to sever was denied, defense counsel inquired whether the court would rule the DWLS inadmissible if Hettich pleaded guilty to the charge before trial on the vehicular homicide charge. The prosecutor objected that "it is too late to plead guilty", and the court indicated it "might not" be willing to entertain a plea because of the State's opposition.

The State's proof of the DWLS consisted of the testimony of Detective Genther that he received a certified copy of Hettich's driving record and that the record indicated that Hettich's license was suspended when she drove the car on April 10, 1990.

Defense witnesses Daniel Gerou and John O'Connor testified that they arrived at the scene together. Both said that Hettich told them Smith had grabbed the steering wheel.

Hettich testified that Smith had lost her balance in the car while trying to put a cassette tape in the cassette player, grabbed the wheel, and caused the car to veer off the road. Hettich said that she looked over at Smith, and when she looked back she saw the pole in front of them.

The toxicologist who tested Hettich's blood sample stated that Hettich's blood alcohol level was .14 percent by weight. The supervisor of the toxicology laboratory, David Predmore, testified about a person's driving ability with a .14 blood alcohol level.

Q: BY MR. DOERSCH: What would your opinion be as to the ability to operate a motor vehicle with this sort of alcohol level?

A: [By Mr. Predmore:] At that level the person would be significantly impaired in their ability to drive and they would have lost at least a third of their normal driving ability.

Defense counsel moved for a mistrial or to strike Predmore's testimony that a person with a blood alcohol level of .14 would lose óne-third of her driving ability. The court ruled that the answer was proper given Predmore's background, and that the answer did not invade the province of the jury because it was a general comment and not specifically about Hettich.

The jury found Hettich guilty on both counts by jury verdict. Judgment and sentence was entered on February 5, 1992, after which Hettich filed this appeal.

### PLEADING GUILTY TO THE DWLS CHARGE

Hettich contends that she was unduly prejudiced by not being able to plead guilty, and the trial court either abused its discretion or violated her rights under CrR 4.2(a). The State disputes that Hettich actually sought to plead guilty.

The record reflects the following colloquy:

MR. KROM: . . . If the defendant were willing to plead guilty to that charge either by an Alford plea or whatever, would the Court rule at that point in time the State would be able to make no reference at all to the fact that she was suspended at the time of trial?

MR. DOERSCH: State's position is it is too late to plead guilty at this point. We are well past arraignment.

MR. KROM: That's a matter of discretion.

THE COURT: That's a matter of whether the Court would accept the plea.

MR. DOERSCH: Yes.

MR. KROM: That's something I have to discuss with my client, depending upon [what] the Court's ruling would be, if the Court ruled that the subject could not come up at all if she entered a plea, then I would discuss that with her seriously.

. . . .

THE COURT: . . . I would only take a straight plea, but if the State's opposed to that, I might not take it, either. It seems to me it's late in the game, too late in the game.

■ From this, it is apparent that defense counsel had not discussed with his client the possibility of pleading guilty to

the DWLS charge. Hettich herself did not plead guilty to the DWLS charge, nor did Mr. Krom feel authorized to offer such a plea on her behalf. Consequently, while the trial court indicated a disinclination to accept the plea, a motion to change the plea from not guilty to guilty was never made. Rather, counsel sought an advisory opinion in advance of making a plea. We reject Hettich's argument because of the equivocal nature of her counsel's questions and the fact no motion to change the plea was ever presented to the trial court.

## PRIOR FORGERY CONVICTIONS

Before trial, the State moved to introduce convictions of two counts of forgery in 1985 which had been dismissed in 1987. Hettich argued that under ER 609(c), convictions which have been pardoned cannot be used for impeachment if the defendant has not been convicted of a subsequent offense punishable by a year in prison.

ER 609 permits introduction of prior convictions "[f]or the purpose of attacking the credibility of a witness . . .". However, the rule prevents admission of evidence of the conviction if the conviction has been subject to a pardon, annulment, certificate of rehabilitation, "or other equivalent procedure based on a finding of the rehabilitation of the person convicted . . .". ER 609(c).[1]

We are presented with an issue undecided under Washington law:

> It is not clear whether Rule 609(c) now makes a vacated conviction inadmissible to impeach the offender even when he is a defendant in a later criminal case. To guarantee that a vacated conviction would not be admissible in a later proceed-

---

[1]ER 609(c) states:

"Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of 1 year, or (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence."

The comment to ER 609(c) states:

"This section supersedes prior Washington law holding that a pardon has no effect upon the admissibility of a conviction for impeachment."

ing, a defendant whose conviction is being vacated would be well advised to include an express finding of rehabilitation in the order vacating the conviction.

(Footnote omitted.) 5A K. Tegland, Wash. Prac., *Evidence* § 239, at 254 (3d ed. 1989).

Interpreting the same ER 609(c) language, federal courts have held that a finding of rehabilitation is required:

> The Rule requires "a finding of the rehabilitation of the person convicted." Thus, courts have consistently upheld introduction ' of prior convictions under Rule 609 where the convictions were later expunged, even where the statute authorizing expungement was motivated by rehabilitation.

(Citations and italics omitted.) *United States v. Wood*, 943 F.2d 1048, 1055 (9th Cir. 1991). *See also Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 435 (2d Cir. 1993) ("We have construed Rule 609(c)(1) strictly, interpreting it to bar admission of a prior conviction only when there has been an express finding that the person convicted has been rehabilitated.").

■ We agree with the holding of these cases. In the present case, Hettich's convictions had not been subject to pardon, annulment, a certificate of rehabilitation, or an equivalent procedure based on a finding of rehabilitation. Accordingly, we find that the trial court did not err in admitting Hettich's forgery convictions under ER 609(c).

## MARIJUANA USE

Hettich was permitted to have a sample of the deceased's blood tested for marijuana. The result indicated that Smith had ingested marijuana sometime before her death, but it could not be determined whether she was under the influence of marijuana at the time of her death. The court excluded the evidence on the ground that the results of the marijuana test, although relevant, were too speculative.

■ We find no error. A trial court has broad discretion in balancing ER 403 considerations.[2] *State v. Rice*, 48 Wn. App.

---

[2]ER 403 states:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

7, 11, 737 P.2d 726 (1987). Here, the evidence of marijuana did not specify whether Smith was under its influence at the time of the accident. Its probative value was thus extremely limited. Nor was there evidence from which the jury could conclude that the use of marijuana significantly added to the extent of Smith's alcohol-induced intoxication. That Smith was intoxicated by five glasses of wine was not contested.

## ABILITY TO DRIVE

The supervisor of the toxicology laboratory, David Predmore, stated that a person with a .14 blood alcohol level "would be significantly impaired in their ability to drive, and they would have lost at least a third of their normal driving ability."

Hettich argues that Predmore's testimony was improperly admitted under the standard in *Frye v. United States*, 293 F. 1013, 34 A.L.R. 145 (D.C. Cir. 1923). However, the *Frye* argument was not raised below, and therefore need not be considered on appeal.[3]

Assuming the objection was timely,[4] we find that the trial court did not commit prejudicial error in admitting the expert's opinion that a person with a .14 blood alcohol level would lose "at least a third of their normal driving ability." Before stating this, Predmore testified that in his opinion the driving ability of a person with such a blood alcohol level "would be significantly impaired." This statement was well

---

or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[3]We doubt that the *Frye* standard would apply here, because Predmore's testimony was not based on novel scientific experimental procedures, "but rather upon his own practical experience and acquired knowledge." *State v. Ortiz*, 119 Wn.2d 294, 311, 831 P.2d 1060 (1992). *See also State v. Young*, 62 Wn. App. 895, 906, 802 P.2d 829, 817 P.2d 412 (1991) (testimony which does not involve new methods of proof or new scientific principles from which conclusions are drawn need not be subjected to the *Frye* test).

[4]Defense counsel objected generally before the statement was made, but did not explicitly object until after cross examination.

within his province as an expert, and we fail to see how the one-third statement added anything significant or unfairly prejudicial. Given that the vehicular homicide statute merely requires that the injury be proximately caused by DWI, the testimony that Hettich was significantly impaired provided all the basis the State needed to argue for a conviction. While there was no scientific basis on which to claim an impairment of one-third, the evidence of Hettich's intoxication was so strong that we find the addition of the comment relatively insignificant. The error, if any, was harmless. *Rice v. Janovich*, 109 Wn.2d 48, 63, 742 P.2d 1230 (1987) (absent a showing of prejudice to the outcome of the trial, an error does not constitute grounds for reversal).

Affirmed.

PEKELIS, A.C.J., and BAKER, J., concur.

Review denied at 123 Wn.2d 1002 (1994).